**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 15 2022

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

KEITH THOMAS,

      Plaintiff,

v.

BANK OF AMERICA, N.A., et al.,

      Defendants.

Civil Action File Nos.
1:21-cv-03369-WMR
1:21-cv-00272-WMR

## PLAINTIFF'S RESPONSE AND OBJECTIONS TO THE DEFENDANTS JOINT BRIEF REGARDING AVAILABILITY OF SANCTIONS

NOW COMES Keith Thomas, plaintiff in the above combined actions

before the court do respond to the defendants brief regarding availability of

sanctions and also in compliance with the Orders of this Court, do respond

to the Court's Order for the plaintiff to show cause as to why sanctions

should not be issued against the plaintiff as requested by the defendants to

this case.

**Plaintiff Objects To Not Being Permitted The 21 Day Safe Harbor**

**Requirement;** Federal Rule of Civil Procedure 11(c)(1)(A) provides; "A

motion for sanctions shall be made separately from other motions or

requests..." "quote"...."but shall not be filed with or presented to the court

unless 21 days after service of the motion....the challenged paper, claim,

defense, contention, allegation, or denial is not withdrawn or appropriately

corrected...."

The plaintiff is of the belief that the equal protection of laws and the due process

1

of laws within the 14th Amendment to The United States Constitution does not abate the stated 21 days safe harbor requirements that are clearly written within the wording of the statue, therefore, the plaintiff objects to not being permitted or afforded the same exact treatment any other litigants or party(s) have previously been afforded that the statue clearly states that the plaintiff is entitle to receive and as a result, plaintiff respectfully states that the court should deny and not grant the proposed sanctions the defendants have briefed to the court as it is clear that the process denies the plaintiff of his rights afforded him by and through the equal protections of laws and the due process of laws clauses within the 14th Amendment to The United States Constitution.

Plaintiff is aware of this Court's stellar and impeccable record as a Georgia State Senator, a Gwinnett County Superior Court Judge and now a Federal Judge and that this Court's record is not one of being biased against party(s) before him, therefore the plaintiff is of the belief that this Court's willingness to permit the plaintiff to seek relief from the previously filed and dismissed cases stands as evidence of a fair and reasonable court, therefore the plaintiff is filing a Notice of Withdrawal of his prematurely filed Motion to Vacate the Order of Dismissal.

**The Sanctions The Defendants Seek Is Unconstitutional and Does Not Comply With The Written Statue;** The defendants brief regarding availability of sanctions did not comply with the statutory format required by federal law, did not provide this plaintiff the 21 day safe harbor after Notice and violates the plaintiff's rights to the equal protection of laws and the due process of laws as outlined within the 14 Amendment to The United States Constitution.

The defendants brief regarding availability of sanctions violates the plaintiff's rights guaranteed him as outlined within the 1st Amendment and the 9th Amendment and the 14th Amendment to The United States Constitution.

The 1st Amendment provides: "Congress shall make no law respecting and establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The 9th Amendment provides; "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

The 14th Amendment provides, among other things, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Within the lists of sanctions, these defendants seek to have the Court to order the following sanctions against this plaintiff;

To PERMANENTLY ENJOIN this plaintiff from initiating any lawsuits in any state or federal court against any of the following entities; (i) Bank of America, N.A.; (ii) Mortgage Electronic Registration Systems, Inc.; (iii) MERSCORP, Inc.; (iv)  Northstar Mortgage Group, LLC.; (v)  McGuire

Woods, LLP;  (vi)  **Rubin Lublin, LLC**;  (vii)  Select Portfolio Servicing, Inc. or  (viii)
DLJ Mortgage Capital, Inc.

To permanently enjoin this plaintiff from suing these defendants in
any court [state and federal] runs afoul with the First Amendment to The
United States which guarantees every citizen a right to petition the
government for redress of grievances and also the Fourteenth Amendment to
The United States Constitution which guarantees every citizen a right to the
equal protection of laws and the due process of laws.  *United States
Constitution, 1st amendment and 14th amendments therein.  See also NAACP
v Button*, 371 US 415 (1963)..The defendants to this case seeks to
completely silence this plaintiff on matters not yet resolved even though they
are in possession of Final Orders and Judgments against this plaintiff.  This
Court stated in open court that he will permit the plaintiff to file his motions
for relief under Rule 60(b) and the plaintiff have in fact done so.  All of the
grounds for relief up to this point in time were filed into the records of this
case as commanded by the court, for that reason alone, there are quite a few
matters not yet resolved within this case and the defendants should not be
entitled an Order sanctioning this plaintiff on the grounds that plaintiff's
constitutional rights are more prevalent a matter than sanctions at this point
in time.

The Ninth Amendment to The United States Constitution prohibits
any portion(s) of a court ordered mandated stipulation, ie…[Sanction
prohibiting this plaintiff from petitioning ANY court against the defendants

4

in this case at any time in the future without written permission from this court].  To make such a broad and far reaching Sanction Order tanamounts to this plaintiff basically no having the same rights as all other citizens within these United States.  Plaintiff was born in this country, served in the United States Military, votes and have paid taxes just like all other U.S. citizens.  For this court or for any court in these United States to implement the type of sanctions against this plaintiff or against any person seeking to redress the courts more than likely will be viewed as a direct violation of the United States Constitution as it would work the same as a [ban on this plaintiff being permitted to petition the government for grievances as well as the plaintiff's freedom of expression within his rights to petition the government for grievances be either denied or forced to be remodeled in a manner that is not that of this plaintiff but in a manner prescribed by the government], for that reason, the plaintiff respectfully request that the broad and far reaching set of sanctions asked for by the defendants be denied as it runs afoul with the Ninth Amendment to The United States Constitution. *See Griswold v Connecticut,* 381 US 479 (1965).

What these defendants seek to do amounts to the court completely tossing this plaintiff's constitutional rights out of the window because they seek to benefit from, first, not having to reveal any of the actual evidence concerning how the 23 August, 2010 purported assignment documents were originally conceived or who's plan it was to conceive that document, secondly, under Rule 12(b), 90% of the evidence needed to make a case

against these defendants were suppressed from being made a part of the

records of the previously filed cases and thirdly, after the plaintiff was able

to uncover various pieces of evidence supporting his claims, the cases had

been dismissed in such a manner that the possibility of the plaintiff's

evidence being applied against these defendants have been non-existing.

Given these facts and if given a fair shot at putting all of the evidence

uncovered by the plaintiff [without an opportunity to conduct discovery],

these defendants are not capable of defending the most of if not all of

plaintiff's asserted claims.  This entire process has been structurally

designed against the plaintiff, however, the pending motion(s) for relief as

instructed by the Court may possibly shine a light on the facts if the

plaintiff's due process and equal protection rights are upheld.  The plaintiff

is quite aware that his fight against these defendants is one such as a [David

versus Goliath], but that was one of the factors that caused the 14th

Amendment to the United States Constitution to be the judicial mechanism that,

from time to time, have leveled the battlefield.  *See Slaughterhouse Cases,*

83 U.S. 36 (1872),  *see Plessy v. Ferguson,* 163 U.S. 537 (1896), *see Brown*

*v. Board of Education of Topeka,* 347 U.S. 483 (1954)..*see Gideon v.*

*Wainwright,* 372 U.S. 335 (1963).. In these cases, the plaintiffs had already

been structurally prevented from receiving justice and the lower courts were

[structurally confined] by the already decided issues in lieu of the now requested

applicability of the United States Constitution.  The plaintiff respectfully

request that this Court deny the defendants efforts at any applications of

6

sanctions against him, and in the alternative, that this Court permit a limited discovery period that includes an opportunity for the plaintiff to have the defendants to produce certain documents and that the plaintiff be heard before the court with live witnesses in order to put all issues within this case to rest on the facts and evidence and not just on the structural restrictions that the plaintiff have been attempting to overcome as a result of the previously issued Orders.

**The Defendants Brief Does Not Establish A Pattern of Bad Faith On the Part of The Plaintiff;** The defendants brief does not establish a pattern of bad faith on the part of this plaintiff.  At no point within their brief have any of the defendants disputed the following fact(s);  (i)  the fact that Northstar Mortgage Group, LLC [Northstar] was and is under a 2009 Cease and Desist Order from the State of Georgia Division of Banking and Finance. (ii)  the fact that according to that specific Order, [Northstar] would be in violation of Georgia law criminally at any point in time after December 2009 if they either participated within, caused to or directed any person, entity or agency or Nominee acting on their behalf to perform or conduct a [residential mortgage transaction] on their behalf or in their name.  (iii)  the fact that there are no factual physical documents supporting any statements made by them [the defendants] or anyone on their behalf cannot establish at any point in time that,  Northstar [of Georgia] ever transferred a financial interest over to Mortgage Electronic Registration Systems, Inc., MERSCORP Holdings, Inc., or MERSCORP Inc. or MERS [MERS] either prior to

7

December 2009 or after December 2009 up and through the date of the filing

of this document. (iv) the fact that none of the aspects of O.C.G.A. § 11-9-203

were ever satisfied at any point in time between the alleged assignment from

[Northstar] to [MERS] on 23 August, 2010, and between [MERS] to Bank

of America, N.A. on 23 August, 2010 and from Bank of America, N.A. over

to any other entity after 23 August, 2010. (v) the fact that none of the

defendants have made a showing before this court or before any court that

any of their claims of having a financial interest within the plaintiff's

Security Deed attached to his personal residence, have ever been scrutinized

by any court in accordance with O.C.G.A. § 23-2-114 which Georgia law

requires to a great degree whenever an entity, person or party makes claims of

ownership to that residence by or through the assigning or a financial interest in

Georgia for the purpose of conducting a foreclosure upon that residence.

"The Eleventh Circuit also has held that the "key to unlocking a

court's inherent power is a finding of bad faith." *Barnes v. Dalton,* 158 F.3d

1212, 1214 (11th Cir. 1998).

The plaintiff's motives and conduct throughout the prosecution of the

claims asserted within the action(s) before this court or before any court

against the defendants named within the brief for the availability of

sanctions, have all been based on factual evidence uncovered that proves to a

certainty that all of the alleged assignment documents relied upon by this set

of defendants dating from 23 August, 2010 up and through the date of the

filing of this document, failed to comply with Georgia law and also that even

8

though the previous courts assigned to plaintiff's previous cases issued Rule 12(b)

dismissals in favor of the defendants, those Orders did not address any of the

above stated issues as well.

Without a showing of [bad faith], there are no actual grounds for the

Court to grant sanctions against this plaintiff.  In the spirit of equal

protection and due process and also in the best interest of justice.

**The 23 August, 2010 Purported Assignment Documents Are**

**Vague and Misleading and Also Improperly Identifies The Plaintiff As a**

**Willing Participant Within The Transaction;**  As already established,

Northstar was not capable of legally performing a residential mortgage

transaction within the State of Georgia after December 2009, however, the

first page of the purported document states the following; "Name and

Address of Assignor;  Mortgage Electronic Registration Systems, Inc.,

solely as nominee for Northstar Mortgage Group, LLC, whose address is

3300 SW 34th Avenue, Suite 101, Ocala, FL  34474.".. (i)  This description

identifies Mortgage Electronic Registration Systems, Inc. [MERS] as the

"Nominee" indicating that on the date of the drafting, signing and witnessing

of the purporting document, that Northstar authorized MERS to act, do or to

perform what is identified to be a residential mortgage transaction. (ii)  This

document is worded in a manner indicating that Northstar Mortgage Group,

LLC is located at and doing business from the address listed in Ocala, Florida.

Additionally, the document begins the last paragraph with the words

"FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby

acknowledged, the undersigned, Mortgage Electronic Registration Systems, Inc, solely as nominee for Northstar Mortgage Group, LLC, "Assignor", whose address is above, does hereby grant, sell, assign, transfer and convey to BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Servicing, LP, "Assignee," whose address is above, all interest of the undersigned Assignor in and to the following described security deed;"

**On 23 August, 2010 MERS' Ability To Function As A "Nominee" Had Already Been Extinguished;** The 23 August, 2010 purported assignment documents are the very beginning document(s) that the defendants now claim to have permitted them [the defendants] to have initially demanding money from this plaintiff under the threat of either pay them any amount of money or we [the defendants] will foreclose upon and take your residence under the power of sale laws of Georgia. As the plaintiff stated earlier, that power of sale authority in Georgia is a statutory matter that should be governed by and through the following OCGA's.....O.C.G.A. §§ 11-9-203, and 23-2-114. The defendants reliance upon the 23 August, 2010 purported assignment documents must be satisfied by several factors that would include the following; (i) MERS cannot act in a manner over or above the entity for which it states or claims to be the Nominee for and (ii) MERS can only act in the capacity of the entity as a Power of Attorney to convey, transfer, sell or assign an interest or element or object of value only at the given point in time that the entity, [Northstar in this instance] commands MERS to do so. In other words or in plain English, MERS cannot sell, assign, convey or transfer any part or portions of a financial interest within any real property at it's own discretion

or at an appointed time that MERS deem appropriate. If that be the case, then MERS would be acting in a manner that places them to be a financial beneficiary of the transfer, assignment, purchase of conveyance of the act relative to the matter.

This event has been already decided before a federal court where MERS have admitted and described their alleged position within any real estate transactions within these United States. *see Mers v. Nebraska Dept. of Banking*, 704 N.W.2d 784 (2005). In that particular case, MERS was accused of basically acting in a manner as if they [MERS] were a banking or financial institution and was charged as such by the State of Nebraska's Banking and Finance Department. After being found to have been acting in that manner, MERS appealed to the District Court and made multiple declarations. One of the declarations indicated that MERS' ability to act in the capacity of a [Nominee] only extended only at the request and command of the actual lender for which they [MERS] was act for at that point in time. MERS agreed that if they acted on their own without the full authorization at the very point in time from the specific entity, that they [MERS] would be in violation of Nebraska's banking and financial laws. MERS went on to describe their limitations and specifically indicated before that court that the only authority given to them to act would have to come from the lending entity and that that specific command would have to be in writing from a member of their service list that is considered to be in [Good Standing] at the time of the request or command for them to act do or perform any action such as the selling, assigning, transferring, or conveying of an interest of a

[Good Standing Member's] real property.

At the establishment of these facts, MERS established multiple factors that are not found to be true as they could be applied to this specific case before this court. First, if the court were to consider the 23 August, 2010 purported assignment documents to be of a valid nature, then the only logical conclusion that can be found is that MERS acted on its' own initiative to assign, convey or transfer an interest from Northstar Mortgage Group, LLC over to Bank of America, N.A. because on 23 August, 2010, Northstar Mortgage Group, LLC [of Georgia] had no authority to perform a residential mortgage transaction and was forbidden from doing so according to The Georgia Department of Banking and Finance. The other scenario is that the Northstar Mortgage Group, LLC identified on the face of the purported assignment document is actually one that has been doing business within the State of Florida under the same exact assumed name of the Northstar Mortgage Group, LLC listed as a Georgia LLC. This scenario is a very real possibility based solely on the stated address on the face of the purported assignment document. Either scenario places the entire matter to be invalid and the Nebraska case cited here supports the plaintiff's assertions that the purported assignment is invalid and should be deemed invalid by this court for obvious reasons and the court should deny any sanctions requested by the defendants.

**The Defendants Can Not Prove That They Have Been Financially Harmed;**
The court asked the defendants several times at the 28 March, 2022 in person hearing "why haven't y'all foreclosed on the plaintiff?" Their answers varied and neither of those answers were in plain language, but in response at a point in time, counsel for Select Portfolio Servicing, Inc stated to the court that they were moving forward with a

foreclosure very soon.

Neither one of the defendants actually claimed that the plaintiff owed they any money, nor did they present any factual documentation in the form of an actual contract signed by the plaintiff agreeing to pay them any amount of money, nor did they present documents supporting any of the purported assignments that are identified by the plaintiff within this response.  None of this material could be presented primarily because no such contract exist between this plaintiff and Bank of America, N.A. or Select Portfolio Servicing, Inc. or between any other entity that was represented before the court on that day that commanded this plaintiff to pay any amount of money to that specific entity.

Neither of the defendants that appeared at the hearing were financially harmed, if they were, they would have stated it in open court.  Northstar Mortgage Group, LLC [of Georgia] was not present on that day for multiple reasons, one of which was that the plaintiff have not been able to perform service and process upon them and also there exist an issue of determining which actual entity it is that actually needs to be served process upon, the Georgia entity that no longer exists or the Florida entity that claims to not have anything to do with this entire matter.

Given the confusing nature of the actions of the defendants coupled with the supporting case law that states to a certainty that the 23 August, 2010 purported assignment documents should be deemed invalid and improper as MERS acted in the capacity of an entity that already had a financial interest within this plaintiff's residential property, the court should deny the defendants request for sanctions and should permit a limited period for discovery so that these issues can be put to rest.  If it is found that there are no entity(s) operating within the State of Florida under the assumed name [Northstar

Mortgage Group, LLC], then that would clarify the address issue on the face of the purported assignment document and if MERS can produce any documents directly assigning a financial interest from Northstar Mortgage Group, LLC of [Georgia] over to MERS that would have authorized MERS to then have assigned a financial interest over to Bank of America, N.A. on 23 August, 2010, then the purported assignment document would have in fact substantiate that the defendants could have suffered a financial harm, otherwise, the plaintiff's statements here are true and the defendants did not suffer a financial harm or financial loss, and for that reason, there are no grounds for the court to sanction this plaintiff as requested by the defendants.

**Plaintiff Request The Court To Stay or Withhold Its Orders In Resolution of The Defendants Requests for Sanctions and To Certify Certain Related Question To The Supreme Court of Georgia Prior To The Resolution;** The plaintiff respectfully request that this Court withhold issuing any Orders or temporary Orders in this matter as to the defendants requests for sanctions against the plaintiff. Plaintiff's first question that plaintiff seeks an answer from The Supreme Court of Georgia is; How does Georgia law apply to the following scenario? There is no dispute that MERS have been accepted within the United States to act as "Nominee" on the behalf of a lender such as it is stated within the documents related to the plaintiff's actual Security Deed. Does Georgia law support Mortgage Electronic Registration Systems, Inc., [MERS] to act as "Nominee" on the behalf of a Georgia LLC  such as Northstar Mortgage Group, LLC , that is prohibited from performing any real estate transactions by way of a Cease and Desist Order issued against them from The State of Georgia Department of Banking and Finance such as in this instant case.

Secondly, do O.C.G.A. § 11-9-203(b) automatically attach a value or ultimately assign a value over to Mortgage Electronic Registration Systems, Inc., [MERS] within any Georgia residential mortgage contracts in which MERS is only named as the "Nominee" to the lender and no other clauses within same said mortgage contract specifically state that MERS have been assigned a financial interest therein?

## CONCLUSION

For the reasons stated herein of which are supported by law and facts, the plaintiff respectfully request the following;

That the Court deny the defendants requests for sanctions against him.

That the Court issue an Order permitting a limited period of time for the plaintiff to conduct discovery against the defendants.

That the Court Withhold or Stay it Order concerning the defendants request for sanctions against the plaintiff until such time that both the brief period for discovery has been granted and performed and until such time that a response to two certified questions concerning matters related to this case are returned back from The Supreme Court of Georgia.

That the Court certify the two questions that the plaintiff have presented within this response to The Supreme Court of Georgia for proper application of Georgia law as it concerns the matters within this case before this Court.

Respectfully submitted on this 15th day of April, 2022.

Keith Thomas, plaintiff
P.O. Box 960242
Riverdale, GA  30296
404-838-0394

**15**

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of this entire document has been

forwarded to the defendants at:

Rubin Lublin, LLC                          McGuire Woods, LLP
3145 Avalon Ridge Pl.                      1230 Peachtree St. N.E.
Suite 100                                  Suite 2100
Peachtree Corners, GA 30071                Atlanta, GA 30309-3534

Within properly addressed envelopes with sufficient 1st Class U.S. Postage affixed

thereto on this 15th day of April, 2022.

Keith Thomas
P.O. Box 960242
Riverdale, GA  30296